**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DENNIS NICOTRA, PREMIER MOTOR
CARS, LLC, CUNNINGHAM GULLWING
GROUP, LLC,
    *Plaintiffs*,

v.

FERRARI FINANCIAL SERVICES, INC.,
    *Defendant.*

No. 3:19-cv-818 (VAB)

**RULING AND ORDER ON MOTION TO TRANSER VENUE**

Dennis Nicotra, Premier Motor Cars, LLC, and Cunningham Gullwing Group, LLC ("Plaintiffs") have sued Ferrari Financial Services, Inc. ("Defendant" or "Ferrari Financial") over the depreciation in value of two antique cars. Mr. Nicotra claims breach of contract, breach of the covenant of good faith and fair dealing, negligence, breach of fiduciary duty, violation of the Connecticut Unfair Trade Practices Act, and constructive trust under Connecticut state law. Defendant now moves to dismiss these state law claims or, in the alternative, transfer venue.

For the following reasons, the motion to transfer venue is **GRANTED.**

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.    Factual Allegations**

Dennis Nicotra, a Connecticut resident, is allegedly a member of two limited liability companies, Premier Motor Cars, LLC ("Premier") and Cunningham Gullwing Group, LLC ("Cunningham"). Compl., ECF No. 1-1 ¶¶ 1-3. Ferrari Financial is a corporation with its principal place of business in New Jersey. *Id*. ¶ 4.

On November 14, 2017, Mr. Nicotra, Premier, Cunningham, and Ferrari Financial allegedly entered into a security agreement in which Ferrari Financial "agreed to extend a line of

credit to Premier and Cunningham, and Premier and Cunningham granted" Ferrari Financial a lien in certain automobiles, including an early 20th century Alfa Romeo and a mid-20th century Ferrari. *Id*. ¶¶ 5-6.

The two cars allegedly were appraised and inspected about once a year. *Id*. ¶ 7. As of October 27, 2017, the appraised value of the Alfa Romeo was $2,228,130 and the appraised value of the Ferrari was $1,787,500. *Id*. ¶¶ 7-8. As of October 22, 2018, the appraised value of the Alfa Romeo was $2,418,130 and the appraised value of the Ferrari was $1,693,267. *Id*. ¶ 9. As of October 2018, both cars had a total appraised value of $4,111, 397. *Id*. The value allegedly remained steady through October 2018. *Id*. ¶ 10.

On December 14, 2018, Mr. Nicotra allegedly signed a forbearance agreement, listed as the "Authorized Representative of Borrower." *Id*. ¶ 11. On the same day, an individual listed as the "Authorized Representative of Ferrari Financial Services, Inc." allegedly signed the same forbearance agreement. *Id*. Premier and Cunningham are both identified as "Borrower." *Id*. ¶ 12.

The forbearance agreement allegedly states that "the Borrower is in possession of the Alfa Romeo and the Ferrari; that the Borrower is in default under the [security agreement]; that there is an outstanding balance due under the [security agreement]; and that the Borrower requests [Ferrari Financial] forbear from exercising its rights under the [security agreement]." *Id*. ¶ 13.

The forbearance agreement also allegedly references a consignment agreement. *Id*. ¶ 14. Either the forbearance agreement or the consignment agreement allegedly states that during Ferrari Financial's possession and control of the two cars, "it will market and attempt to sell the automobiles, and will forbear from exercising any of its rights under the [security agreement] with respect to the outstanding balance." *Id*. The forbearance agreement further allegedly states

2

"that any proceeds from the sale of the Alfa Romeo or the Ferrari will be used to satisfy the Borrower's outstanding obligations under the [security agreement], and that proceeds over the payoff would go to Premier and Cunningham." *Id*. During the forbearance period, Ferrari Financial will allegedly use reasonable efforts to sell the cars for "a price that is sufficient to payoff the Outstanding Balance." *Id*. ¶ 15. The combined appraised values of the two cars allegedly "were and are significantly more than the outstanding balance." *Id*. ¶ 16.

The consignment agreement allegedly does not identify a borrower or lender, similarly to the forbearance agreement. *Id*. ¶ 18. Ferrari Financial is listed as the "Consignee" and Mr. Nicotrais listed as the "Consignor." *Id*.

On December 14, 2018, Mr. Nicotra signed the consignment agreement. *Id*. ¶ 19. An "Authorized Representative of Ferrari Financial Services, Inc." signed the consignment agreement the same day. *Id*.

On or about December 14, 2018, both cars were delivered to 250 Sylvan Avenue in Englewood Cliffs, New Jersey, the address of Ferrari Financial. *Id*. ¶¶ 21; 4.

Ferrari Financial allegedly did not sell either car. *Id*. ¶ 22. Nor did Ferrari Financial allegedly attempt to sell either car in a commercially reasonable manner, use reasonable efforts during the forbearance period to sell either car, or use reasonable efforts to sell either car during the forbearance period "for a price sufficient to pay off the outstanding balance." *Id*. ¶ 23. Ferrari Financial allegedly put in minimal, inexpensive efforts to sell the car, none of which were commercially reasonable. *Id*. ¶ 25.

Commercially reasonable methods to sell the cars allegedly would include: marketing and selling the cars separately; showing the automobiles in dealerships; and entering the cars in "at least three major auctions for rare and collectible investment-grade automobile[s]." *Id*. ¶ 26.

The tele-marketing and advertising efforts undertaken by Ferrari Financial allegedly caused the two cars "significant negative publicity[,]" which Ferrari Financial allegedly should have understood. *Id*. ¶ 28. The allegedly lackluster efforts "tarnished the reputation of each of these automobiles, and greatly diminished and undermined the market" for each. *Id*. ¶ 29.

### B.   Procedural History

On May 28, 2019, Ferrari Financial removed this case to federal court. Notice of Removal, ECF No. 1 (May 28, 2019). *See also* Statement in Support of Removal, ECF No. 2 (May 28, 2019); Notice of Pending Mots., ECF No. 3 (May 28, 2019). The original Complaint alleged breach of contract, breach of covenant of good faith and fair dealing, negligence, breach of fiduciary duty, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), and constructive trust.

On July 3, 2019, Ferrari Financial timely filed a motion to dismiss or transfer venue. Mot. to Dismiss or Transfer Venue, ECF No. 12 (July 3, 2019) ("Mot. to Dismiss"); *see also* Mem. in Support of Mot. to Dismiss, ECF No. 13 (July 3, 2019) ("Def.'s Mem.").

On August 23, 2019, Plaintiffs timely filed a memorandum in opposition. Mem. in Opp., ECF No. 16 (Aug. 23, 2019) ("Pls.' Opp.").

On September 6, 2019, Ferrari Financial filed a reply to Plaintiffs' opposition. Reply, ECF No. 17 (Sept. 6, 2019) ("Def.'s Reply").

On January 14, 2020, the Court held a telephonic hearing on Ferrari Financial's motion. Minute Entry, ECF No. 33 (Jan. 14, 2020).

## II.   STANDARD OF REVIEW

### A.  Transfer Venue

Motions seeking to transfer venue based on forum selection clauses are enforced through 28 U.S.C. § 1404(a) and the doctrine of *forum non conveniens.* "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). "[B]ecause both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause point to a federal forum." *Id*. at 61 (internal citations and quotation marks omitted).

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id*. at 62; *see id*. at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."). "The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and further vital interests of the justice system." *Id*. at 63 (quoting *Stewart Org., Inc.v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-15 (1972) (holding that courts must give "full effect" to "the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause" absent a showing that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching").

"For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given

5

controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

### B. Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss

for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court, however, may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

### A. Transfer of Venue Based on a Forum Selection Clause

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); *accord Gottlieb v. U.S. Sec. & Exch. Comm'n*, 723 F. App'x 17, 19 (2d Cir. 2018).

To determine whether a forum selection clause is presumptively enforceable, courts examine three factors: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive; and (3) whether the claims and

7

parties involved in the suit are subject to the forum selection clause. *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)); *see also F5 Capital v. RBS Sec. Inc.*, 692 F. App'x 66, 68 (2d Cir. 2017) (quoting *Martinez*, 740 F.3d at 217). If the clause was reasonably communicated to the party resisting enforcement, has mandatory force, and covers the claims and parties involved in the suit, the clause is presumptively enforceable. *Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383).

Ferrari Financial argues that the forum selection clauses in the Security, Forbearance, and Consignment Agreements requires this case's transfer to the United States District Court for the District of New Jersey. Def.'s Mem. at 22. According to Ferrari Financial, the forum selection clauses "are clear and unambiguous, and they are set forth in the main text of each of the Security, Forbearance, and Consignment Agreements[,]" and "unequivocally provide for exclusive jurisdiction in New Jersey." *Id*. at 24; *see also* Ex. A - Security Agreement, ECF No. 12-1 at 9 (July 3, 2019) ("THE BORROWER SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL AND STATE COURT IN NEW JERSEY . . .") ("Security Agmt"); Ex. B - Forbearance Agreement, ECF No. 12-2 at 4 (July 3, 2019) ("The Borrower hereby consents to the exclusive jurisdiction of any state or federal court situated in Bergen County, New Jersey . . .") ("Forbearance Agmt."); Ex. B - Consignment Agreement (Ex. A of Forbearance Agmt.), ECF No. 12-2 ¶ 12 (July 11, 2019) ("all claims will be venued in Bergen County, New Jersey") ("Consignment Agmt"). Lastly, Defendant argues that "Plaintiffs' causes of action . . . are all based upon and arise solely from their contractual relationship with [the

Defendant], specifically, the rights and obligations under the Security, Forbearance, and Consignment Agreements." *Id*. at 25.

Plaintiffs make three arguments. First, they argue that the Consignment Agreement governs the current action, Pls.' Opp. at 13, and that the Consignment Agreement does not contain a mandatory forum selection clause, *id*. at 12. Second, they argue that "[o]nly the LLC plaintiffs executed the Forbearance and Consignment agreements" and that "the individual plaintiff [Mr. Nicotra] is not a defined 'Borrower' under the Forbearance Agreement, and only the Borrower signed the Forbearance Agreement, not Dennis Nicotra individually." *Id*. at 13. Third, they argue that the Consignment Agreement is permissive, not mandatory, and "allows claims to be brought in Bergen County, New Jersey courts[,]" and reading the Consignment Agreement as requiring exclusivity, like the Forbearance Agreement forum selection clause, would be "duplicative and superfluous if the Consignment Agreement is merely a part of the Forbearance Agreement." *Id*. at 15.

In reply, Defendant notes that the "Consignment Agreement, which was executed as a material part of and annexed to the Forbearance Agreement, contemplates that all claims will be venued in New Jersey and is thus consistent with the exclusive jurisdiction provisions of the Security Agreement." Def.'s Reply at 6. Furthermore, Ferrari Financial submits that the forum selection clause found in the Forbearance Agreement "applies 'with regard to any actions, claims disputes or proceedings relating to this Forbearance Agreement, the Security Agreement, <u>or any</u>

9

document delivered hereunder or in connection herewith," including the Consignment Agreement. *Id.* (emphasis in the original).

The Court agrees.

There are three relevant forum selection clauses. The first, the Security Agreement, states:

> *Section 17. Consent to Jurisdiction.* THE BORROWER SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL AND STATE COURT IN NEW JERSEY FOR THE PURPOSES OF ALL LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Security Agmt. at 9 (emphasis in the original). Mr. Nicotra signed this agreement on November 14, 2017 three times, as a member of Premier; as a member of Cunningham; and in his individual capacity as a guarantor. *Id.* at 10. Nicola Boschetti signed the agreement for Ferrari Financial as the Managing Director.

The second, the Forbearance Agreement, states:

> **9. JURISDICTION.** The Borrower hereby consents to the exclusive jurisdiction of any state or federal court situated in Bergen County, New Jersey, and waives any objection based on lack of personal jurisdiction, improper venue or *forum non conveniens*, with regard to any actions, claims, disputes or proceedings relating to this Forbearance Agreement, the Security Agreement, or any document delivered hereunder or in connection herewith, or any transaction arising from or connected to any of the foregoing. The Borrower waives personal service of any and all process upon them, and consent to all such service of process made by mail or by messenger directed to Borrower. Nothing herein shall affect the Lender's right to serve process in any manner permitted by law, or limit the Lender's right to bring proceedings against the Borrower or any of his property or assets in the competent courts of any other jurisdiction or jurisdictions.

Forbearance Agmt. at 4 (emphasis in the original). Mr. Nicotra signed this as a "member" on the signature line reading "Authorized Representative of Borrower," on December 14, 2018. *Id.* at 8.

10

Mr. Boschetti signed the Agreement as the Authorized Representative of Ferrari Financial on the same date.

The third, Exhibit A of the Forbearance Agreement, the Vehicle Consignment and Sales Agreement, states:

> 12. In the event formal litigation is required, the prevailing party shall be entitled to recover reasonable attorney's fees and costs incurred. The Consignor and Consignee hereby waive their right to trial. New Jersey Law will apply and all claims will be venued in Bergen County, New Jersey.

Consignment Agmt. ¶ 12. Both Mr. Nicotra and Mr. Boschetti signed the Consignment Agreement on December 14, 2018. *Id*. Mr. Nicotra signed as the Authorized Representative of the Consignor and listed his title as "Member." *Id*. Mr. Boschetti signed as the Authorized Representative of Ferrari Financial and listed his title as "Managing Director." *Id*.

A designation of New Jersey as the venue was consistent through all three documents and Mr. Nicotra, in some capacity, signed each one of them. Venue in New Jersey thus is proper, under whichever agreement Mr. Nicotra brings the case.

"[F]orum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances[.]" *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720-21 (2d Cir. 2013). "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 286 (affirming district court's finding that "'any legal proceedings that may arise out of [the agreement] are to be

11

brought in England' as mandatory"). Applying the four-part test previously outlined, the Court determines that the proper venue is New Jersey.

The first element asks "whether the clause was reasonably communicated to the party resisting enforcement." *Magi XXI, Inc.*, 714 F.3d at 721 (quoting *Phillips*, 494 F.3d at 383-84)). Here, the language of the forum selection clause appeared in capital letters in the Security Agreement, and also appeared in the Forbearance Agreement as well as the Consignment Agreement. Mr. Nicotra does not appear to contest that the clauses were reasonably communicated. Pls.' Opp. at 14. Rather, he contends that the language of the Consignment Agreement controls and that language is permissive. *Id*. In doing so, he emphasizes the second element.

The second element asks "whether the parties are required to bring any dispute to the designated forum or simply permitted to do so" to determine if the clause is mandatory or permissive. *Phillips*, 494 F.3d at 383. "A mandatory forum selection clause grants exclusive jurisdiction to a selected forum, while a permissive forum selection clause only reflects the contracting parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved in that forum." *Macsteel Intern. USA Corp. v. M/V Larch Arrow, her engines, boiler, etc.*, 354 F. App'x 537, 539 (2d Cir. 2009) (finding that the phrase "to be" within a forum selection clause made it mandatory); *see also Central National-Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF"*, 204 F. Supp. 2d 675 (S.D.N.Y. 2004) (the phrase "to be decided" was mandatory).

Because Mr. Nicotra argues that the forum selection clause does not apply to him and that his claims arise out of the Consignment Agreement, the Court will consider whether the forum selection clause in the Consignment Agreement is mandatory or permissive. The Consignment

Agreement stated that "New Jersey law will apply and all claims will be venued in Bergen County, New Jersey." Consignment Agmt. ¶ 12. In contrast to the word "may" which "is unambiguously permissive," parties used the verb "will be." *Great Northern Ins. Co., v. BMW of North Am., Inc.*, No. 15-cv-00416 (VAB), 2018 WL 1472513, at *7 (D. Conn. Mar. 25, 2018).

Plaintiff relies heavily on *Boutari* to state that this forum selection clause is permissive rather than mandatory. In *Boutari*, however, the forum selection clause specified only jurisdiction and did not mention venue. 22 F.3d at 52 ("This Agreement shall be governed and construed according to the Laws of Greece. Any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts."). Plaintiff compares the phrase "will be venued" to the use of "shall" in the *Boutari* agreement. Pls.' Opp. at 14 (quoting *Boutari*, 22 F.3d at 52). In doing so, Plaintiff neglects the importance of the inclusion of not only a clause specifying jurisdiction, but also venue.

This case more closely resembles *Seward v. Devine*, 888 F.2d 957 (2d Cir. 1989). There, two of the three documents at issue specified both venue and jurisdiction. *Id*. at 962. The plaintiffs argued that the forum selection clauses "merely identif[ied] the Supreme Court in Delaware County as an appropriate forum for actions arising out of the interpretation or execution of the pertinent agreements, but do not limit venue or jurisdiction exclusively to that court." *Id*. at 962 (The two agreements that specified jurisdiction and venue selected Delaware County "for all legal matters and disputes arising from the execution of th[ese] agreement[s]."). The Court, however, found that "that [the] agreements plainly provided that venue was to be limited solely to the state court in Delaware County." *Id*.

Here, all three agreements plainly identify New Jersey as the venue. That the other two previously signed agreements here contained forum selection clauses with perhaps stronger

13

language limiting venue to New Jersey further corroborates that the venue of New Jersey is mandatory.[1] *See also Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 722 (2d Cir. 1982) (declining to adopt an interpretation of a forum selection clause which "would render the forum selection clause meaningless").

The Court next considers "whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips*, 888 F.2d at 962. Mr. Nicotra argues that (1) as an individual he "is not a defined 'Borrower' under the Forbearance Agreement, and only the Borrower signed the Forbearance Agreement[;"; (2) that he signed the Consignment Agreement "as 'Authorized Representative of Consignor" with the title of 'member'; and (3) "[o]nly the LLC plaintiffs executed the Forbearance and Consignment agreements." Pl. Opp. at 13.

"[W]here the alleged conduct of nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to the forum selection clauses." *Magi XXI, Inc.* 714 F.3d at 723 (quoting *Holland Am. Line v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)). To enforce a forum selection clause against a non-signatory, "the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Id*.

Although the converse situation exists here, the reasoning and outcome is applicable. Mr. Nicotra cannot distance himself from the agreements he read, signed, and entered into on behalf of other entities. Mr. Nicotra knew of the terms of all three agreements when he signed for the LLCs and was understood to be "the source of the contractual authority granted" to the LLCs in

---

[1] Mr. Nicotra concedes that the "Forbearance Agreement forum selection clause contains exclusivity language that would make New Jersey the mandatory forum for claims." Pl. Opp. at 15.

the agreements. *Magi XXI, Inc.* 714 F.3d at 724; *See also Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors Corp.*, 875 F. Supp. 2d 297, 307 (S.D.N.Y. 2012) ("A non-party to a contract may be subject to its forum selection clause if the non-party is so 'closely related' to either the parties to the contract or the contract dispute itself that enforcement of the clause against the non-party is foreseeable.").

The strict standard for binding a non-party to a forum selection clause requires that "the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018). Here, it is "foreseeable" that Mr. Nicotra himself and not just the entities on whose behalf he signed would be bound by the forum selection clause. *See Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) ("Based on the fact that Staroselsky himself signed the MOU (albeit in his representative rather than individual capacity), it was – or should have been – foreseeable to him that the clause might have application to disputes arising under that agreement that also involved him."(citation omitted)); *see also Southridge Partners II Ltd. Partnership v. SND Auto Group, Inc.*, No. 3:17-cv-1925 (KAD), 2019 WL 6936727 (D. Conn. Dec. 19, 2019) (finding the forum selection clause enforceable against a defendant that served as chairman of the board or CEO at all relevant times and signed an agreement in his capacity as CEO). Indeed, if Mr. Nicotra claims not to be a party to these agreements, it is unclear his entitlement to relief. *Cf. Hillside Metro Assoc., LLC v. JPMOrgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (A contractual remedy requires a contractual relationship;

15

a third party beneficiary status requires the contract terms "'clearly evidence [ ] an intent to permit enforcement by the third party' in question." (citation omitted)).

Finally, the Court turns to whether Mr. Nicotra "has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 383-84 (quoting *Bremen*, 407 U.S. at 15)). Nothing in this record suggests that it would be unreasonable or unjust to enforce the forum selection clause here. As a result, the Court need not consider this element.

Accordingly, having determined that the proper venue is New Jersey, the motion to transfer venue to the United States District Court for the District of New Jersey will be **GRANTED**.[2] All other pending motions, specifically Defendant's motion to dismiss, are **DENIED**, without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the motion for transfer of venue is **GRANTED.**

The Clerk of the Court is respectfully requested to transfer this case to the United States District Court for the District of New Jersey.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of January, 2020.

>  /s/ Victor A. Bolden
> VICTOR A. BOLDEN
> UNITED STATES DISTRICT JUDGE

---

[2] Because the Court has determined that venue in this district is improper, the Court need not and does not address the motion to dismiss. *See Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 742 (S.D.N.Y. 2013) (noting that it would be "prudent for the Court to address the motion to transfer venue first" where motion to dismiss could effectively be decided by the transferee court); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court.").

Case 2:20-cv-00876-MCA-LDW Document 34 Filed 01/15/20 Page 17 of 17 PageID: 176